1

2

3

4

5

6                    **UNITED STATES DISTRICT COURT**

7                    EASTERN DISTRICT OF CALIFORNIA

8

9   ANDREW MICHAEL HAYS,                | Case No. 1:14-cv-00001-SMS

10            Plaintiff,

11       v.                             | ORDER AFFIRMING AGENCY'S
                                        | DENIAL OF BENEFITS AND ORDERING
12   CAROLYN W. COLVIN, Acting          | JUDGMENT FOR COMMISSIONER
     Commissioner of Social Security,
13
              Defendant.
14

15       Plaintiff Andrew Michael Hays seeks review of a final decision of the Commissioner of

16  Social Security ("Commissioner") denying his applications for disability insurance benefits ("DI")

17
    under Title II and for supplemental security income ("SSI") under Title XVI of the Social Security
18
    Act (42 U.S.C. § 301 *et seq.*) ("the Act").  The matter is before the Court on the parties' cross-briefs,
19
    which were submitted without oral argument.  After a review of the record and applicable law, the
20
21  Court affirms the decision of the Administrative Law Judge ("ALJ").

22              I.  PROCEDURAL HISTORY AND FACTUAL BACKGROUND[1]

23      A.  *Procedural History*

24      Plaintiff applied for DI[2] and SSI[3] on November 17, 2010.[4]  AR 60, 70.  He alleged disability

25

26  ─────────────────────
    [1] The relevant facts herein are taken from the Administrative Record ("AR").
27  [2] Plaintiff's DI application states she also applied for benefits under Part A of Title XVIII of the Act.
    AR 193.  "Title XVIII of the Social Security Act (the "Medicare Act," 42 U.S.C. §§ 1395–1395ccc)
28  provides a federal health insurance program for elderly and disabled persons. Medicare Part A
    covers inpatient hospital services and certain related benefits (Sections 1395c–1395i–4), and it is

beginning on September 30, 2008.[5]  AR 193.  The Commissioner denied the claims on April 14,

2011, and upon reconsideration, on August 17, 2011.  AR 80, 87.   Plaintiff then filed a timely

request for a hearing.  AR 115.

Plaintiff appeared and testified before an ALJ, John Cusker, on July 25, 2012.  Also at the

hearing were Plaintiff's counsel and an impartial vocational expert, Judith Najarian.  AR 25.  In a

written decision dated September 21, 2012, the ALJ found Plaintiff was not disabled under Titles II

and XVI of the Act.  AR 20.  On October 30, 2013, the Appeals Council denied review of the ALJ's

decision, which thus became the Commissioner's final decision.  AR 1.  Plaintiff filed a timely

complaint.  Doc. 1.

B. *Factual Background*

1. Plaintiff's testimony

Plaintiff was born on June 23, 1968.  He was, at the time of the hearing, forty-four years old,

and unmarried with one son.  AR 29, 35.  He alleged that a head trauma, which caused mental

problems, and a right knee injury, limited his ability to work.  AR 28, 33-34, 43-44.  And while

Plaintiff did not mention any hearing issues, an undated disability report stated deafness in his right

ear also limited his ability to work.  AR 190.

Plaintiff lived with his father and son.  AR 35.  Plaintiff last worked for CC&A Construction,

handling concrete.  AR 30, 33.  He received treatment, once every two months, at the Central Valley

Indian Health Clinic (CVIHC) for a torn anterior cruciate ligament and for depression.  AR 34.

provided automatically for individuals entitled to Social Security retirement or disability benefits (Section 426)." *Beverly Cmty. Hosp. Ass'n v. Belshe*, 132 F.3d 1259, 1262 (9th Cir. 1997) (internal footnote omitted).
[3] Plaintiff's SSI application states he also applied for any applicable medical assistance under Title XIX of the Act.  AR 160.
[4] The record reflects two different application dates for Title XVI benefits.  The initial Disability Determination and Transmittal states Plaintiff applied for SSI on November 17, 2010, but the Application Summary for SSI reflects a date of November 22, 2010.  AR 70, 160.
[5] At the hearing before the ALJ, Plaintiff moved to amend the alleged disability onset date from September 30, 2008, as stated in his application, to June 1, 2009.  AR 28.  The ALJ stated he would "consider [the] motion," but did not rule on it.  AR 29.  In his written decision, the ALJ adopted the September 30, 2008 onset date.  AR 9.

2

Plaintiff admitted to having a drinking problem, consuming two twenty-four ounce beer cans two to three times a week for the past two years.  His last drink was two days before the hearing.  AR 34-35.  He also admitted to using marijuana the week before, and did so once a week for the last twenty years.  AR 35.  He used methamphetamine a month or two earlier and had been using it for over twenty years.  His longest period of sobriety was nine months and that occurred seventeen years ago.  He admitted to lying to the physicians at CVIHC about his methamphetamine use.  AR 44-45.

Plaintiff was able to dress and bathe himself and do house chores such as laundry, vacuum, mop, and dust; although a one to two hour break was needed after fifteen minutes into a chore.  AR 36, 43.  He cooked (used a microwave and made sandwiches) three times a week and enjoyed fishing.  AR 36, 43.  His social activities included hanging out with his son and brother.  AR 42.

With regard to Plaintiff's physical abilities, he could stand on his feet for four hours and sit for two hours at a time.  He could sit for six hours in the course of an eight-hour workday if given a break every two hours.  AR 38-39.  About once or twice a week, he suffered headaches which can last from thirty minutes to an hour, accompanied by sinus pain.  AR 44.  Plaintiff did not think he could perform his old job as he could not handle the heavy work equipment.  AR 40.

2.  Vocational expert testimony

Ms. Najarian, the vocational expert (VE), testified that Plaintiff's construction job entailed moving materials for cement masons and classified the job under construction worker II of the Dictionary of Occupational Titles (DOT), with code 836.687-026.  The job was unskilled with an SVP[6] of 2.  AR 46.  Aside from the construction job, Plaintiff's work history included other jobs such as a cook.  The VE noted Plaintiff worked at the Sawmill Restaurant.  She classified the job as a cook's helper, with code 317.687-010, and unskilled with an SVP of 2.  Plaintiff also worked at the

---

[6] "'SVP' refers to the 'specific vocational preparation' level which is defined in the DOT as 'the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.' *Dictionary of Occupational Titles,* Appendix C, page 1009 (4th ed.1991)."  *Bray v. Comm'r of Soc. Sec. Admin.* 554 F.3d 1219, 1230 (9th Cir. 2009).

Wishaw Center.  The VE classified Plaintiff's job there as a cook specialty, with code 313.361-026, and a first level skill with an SVEP of 5.  AR 47.

The ALJ posed a number of hypotheticals for the VE.  He first directed the VE to consider a person of the same age, education and work experience as Plaintiff, who has the following physical limitations: lift and carry fifty pounds occasionally and twenty-five pounds frequently, can stand or walk and sit with normal breaks for about six hours in an eight-hour workday, push and pull without limitation (except as limited under lift and carry), frequently perform all postural activities except that he can only occasionally climb ladders, ropes, or scaffolds, has no manipulative limitations, no visual limitations, and has right ear hearing loss, but normal left ear hearing.  Additionally, the individual has one environmental limitation: avoid concentrated exposure to hazards such as machinery and heights.  AR 48.  As to mental limitations, he is limited to sustained non-public simple work.  The VE opined that such an individual would be able to perform Plaintiff's past job of cook helper.  AR 49.  The individual could also perform other medium level jobs such as kitchen helper (DOT 318.687-010), janitor (DOT 389.683-010) or meat trimmer (DOT 525.684-054).  AR 49-50.

The ALJ then directed the VE to assume a person with the same vocational factors as Plaintiff and with the same physical limitations as the person in the first hypothetical.  But, the mental limitations include an extremely low range of functionality, primarily in the areas of concentration, persistence, learning, memory, acquiring new knowledge and applying knowledge already gained to new situations.  Notably, the mental limitations are moderate to severe.  AR 51.  The VE opined that such individual could not perform Plaintiff's past work or any jobs in the national economy.  AR 51-52.

Plaintiff's counsel also presented a hypothetical.  He asked the VE to assume the same person in the ALJ's second hypothetical, with the addition that such individual's workday would be reduced to seven hours.  The VE opined that such individual would not be able to keep his job.  AR

4

53.

### 3.   Function Report

Plaintiff completed a Function Report on January 4, 2011.  Therein, Plaintiff described his typical day, which consisted of watching television, taking the dog out, sleeping, eating breakfast and dinner.  AR 204.  He had no problems with personal care.  He cared for his son, cooked breakfast daily and dinner when needed.  AR 205-206.  With encouragement, he would do laundry, vacuum, and dust, spending fifteen to ninety minutes on each task.  AR 206.  He went grocery shopping once a week for about half an hour.  He went out four times a day, but did not drive as he had no car.  AR 207.

Plaintiff spent no time with others and had problems getting along with people when he drank alcohol.  AR 208-209.  As a result of his conditions, Plaintiff slept a lot, had trouble concentrating and following multiple instructions, and became afraid of people he did not know.  AR 205, 209.  Other problems included walking (bad knee), hearing, and remembering.  He could pay attention for five minutes at most and could not finish what he started.  He could follow written instructions, but needed to be told more than once with spoken instructions.  AR 209.  He would get angry in response to stress and changes in routine.  AR 210.  He could walk for one mile before needing to rest for fifteen minutes.  AR 209.

### 4.   Medical Evidence

#### a.   *Central Valley Indian Health Clinic (CVIHC)*

Plaintiff began receiving treatment from physicians at CVIHC in 2008.  AR 213.  On a March 25, 2010, questionnaire, Plaintiff indicated "no" to using street drugs, whether past or present.  AR 244.  Test results from a urine sample collected on March 31, 2010, showed positive for marijuana and methamphetamine.  AR 242.

During a November 2, 2011, visit, Plaintiff appeared satisfied and stated he no longer used methamphetamine.  That same day, he received a mini-mental state examination (MMSE) score of

29/30, which reflected no cognitive dysfunction.  AR 307.

### b. *Dr. Perminder Bhatia*

On January 12, 2011, Dr. Perminder Bhatia, a consultative examiner, evaluated Plaintiff at the request of the Department of Social Security (DSS).  AR 266.  Plaintiff was referred to Dr. Bhatia for a disability evaluation based on a history of memory impairment.  Dr. Bhatia noted that Plaintiff "smokes . . . uses marijuana and is still social drinking though he used to be drinking [sic] heavily."  AR 266.  Plaintiff complained of memory problems and a right knee issue.  His neurological examination results were generally normal, with an MMSE score of 28/30.  AR 267. Dr. Bhatia concluded that the memory impairment did not seem to "stand," and that Plaintiff could lift up to fifty pounds, and "sit and work."  AR 268.

### c. *Dr. Jagdev Singh*

On February 1, 2011, Dr. Jagdev Singh, another consultative examiner, evaluated Plaintiff for hearing loss.  Plaintiff reported being hit by a car at around age two, which required head surgery.  On examination, he appeared healthy and in no distress.  He had normal speech and could hear normal level conversations.  AR 269.  Dr. Singh concluded that Plaintiff had normal left ear hearing, but had right ear hearing loss.  AR 270.

### d. *Dr. Mark Popper*

Psychologist Mark Popper evaluated Plaintiff on January 26, 2011, at the request of DSS. AR 274.  Plaintiff appeared oriented to person, place, time and situation.  His cognitive functioning appeared intact, with adequate memory and judgment, although his mood was depressed.  He exhibited no thought disorder and appeared negative for any delusions.  Plaintiff denied suicidal thoughts and "was negative for drugs and alcohol."  AR 274.  Plaintiff reported being hit by a car at age two and "has not been right" since.  He was assessed for the injury at age twelve but did not know of the results.  He also reported regular drug and alcohol use, admitting to consuming marijuana and alcohol the day before, and methamphetamine "a couple of days ago."  AR 275.  But

6

he denied any drug or alcohol use on the day of the evaluation.  AR 275.

Dr. Popper concluded that Plaintiff's test results were indicative of organic brain damage and placed him in the extremely low range of functionality.  Dr. Popper diagnosed Plaintiff with "R/O[7] Major Depression,[,] R/O Organic Brain Damage[, and] R/O Poly Substance Abuse."  AR 276.  In sum, Plaintiff's functional limitations were primarily related to concentration, persistence, learning, memory, acquiring new knowledge and applying knowledge already gained to new situations, all of which were moderate to severe.  In particular, Plaintiff's low frustration tolerance could severely impact his ability to adapt in a normal work environment, and with supervisors and coworkers.  Additionally, his symptoms of depression may have caused the substance abuse.  Dr. Popper recommended weekly individual psychotherapy and neuropsychological assessment.  AR 277.

### e.  *Medical Consultants*

Dr. K Gregg, a state medical consultant, completed an analysis of Plaintiff's case on March 14, 2011.  AR 294.  In a Psychiatric Review Technique form, a check-the-box questionnaire, Dr. Gregg noted Plaintiff experienced changes associated with regular use of substances which affected his central nervous system, and evaluated him under Listing 12.02—organic mental disorder—but concluded Plaintiff had: (1) mild limitations in activities of daily living and maintaining social functioning, (2) moderate limitation in maintaining concentration, persistence, or pace, and (3) no episodes of decompensation.  AR 284-286.  He opined that the only mental issue was drug and alcohol abuse based on the positive urine test, the MMSE score of 28/30, no signs of memory impairment, and normal mental status examinations.  He noted that any "retest in [the] future should have a [Test of Memory Malingering] and/or Rey[8] for malingering."  AR 288.

---

[7] "R/O" is the medical abbreviation for "rule out."  mediLexicon (September 30, 2015, 1:15 PM), http://www.medilexicon.com/medicaldictionary.php?t=78815.

[8] "Rey" refers to the Rey Fifteen Item Memory Test used to detect malingering.  PsychCentral (September 30, 2015, 1:20 PM), http://pro.psychcentral.com/tests-to-detect-malingering/003729.html.

In a Mental Residual Functional Capacity Assessment, also a check-the-box questionnaire, Dr. Gregg concluded that, generally, Plaintiff was not significantly limited in the areas of understanding and memory, sustained concentration and persistence, social interaction, and adaption. AR 290.  Physically, Dr. Gregg found Plaintiff had left ear hearing within normal limits, but no right ear hearing, and unlimited RFC with hearing precautions.   Psychologically, Plaintiff had a substance abuse issue.  Dr. Gregg believed the test results from Dr. Popper were not a true representation of Plaintiff's mental functioning as there was contrary evidence in his file. He opined that the substance abuse may be material to the disability determination because it appeared Plaintiff could sustain simple repetitive tasks with limited public contact, and was capable of sustained non-public simple work.  AR 293.

Another medical consultant, Dr. R. Bitonte, completed a Physical RFC Assessment of Plaintiff on March 16, 2011.  Therein, he concluded Plaintiff could occasionally lift fifty pounds, frequently lift and/or carry twenty-five pounds, stand and/or walk and sit for about six hours in an eight-hour workday, and had no limitations on pushing and/or pulling.  AR 296.  Additionally, Plaintiff could frequently climb, balance, stoop, kneel, crouch, and crawl.  He had no manipulative or visual limitations, but was limited in his hearing.  AR 297-298.  Plaintiff had no environmental limitations except that he should avoid concentrated exposure to hazards.  AR 298.  A third medical consultant, Dr. E. Murillo, completed a case analysis on August 10, 2011, which affirmed the prior medical consultants' decisions.

5.   Third Party Statements

Plaintiff's father, Larry Hays, completed a Third Party Function Report on January 5, 2011. AR 196.  He spent twenty hours a day with Plaintiff.  Together, the two went fishing, shopping, and cleaned the house.  AR 196.  Plaintiff stayed in his room most of the time, slept a lot, and had to be "prod[d]ed" to engage in personal care or household chores, which he did for one hour per week.  He took care of the pets, cooked breakfast sometimes, and prepared meals almost daily.  AR 196-198.

Plaintiff did not drive has he had no car, but went shopping for grocery or clothes four to five times per week, one hour at a time.  AR 199.  He enjoyed watching television and fishing, which he did about ten to fifteen times per year.  AR 200.  He socialized with his brother on a weekly basis.  AR 200.

Mr. Hays recalled Plaintiff suffering a severe injury at a young age, but did not explain where or how the injury occurred.  AR 197.  He noted Plaintiff had anger problems at times and possible depression.  AR 201.  Specifically, Plaintiff's conditions affected his walking (bad knee), hearing (deaf in one ear with hearing loss in the other), memory (short term), concentration (loss of interest), and ability to complete tasks (loss of interest), follow instructions (cannot remember more than 1 or 2 instructions) and get along with others (anger).  AR 201.

6.  ALJ's Decision

A claimant is disabled under Titled II and XVI if he is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of no less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process which an ALJ must employ to evaluate an alleged disability.[9]

---

[9]  The ALJ must determine: "(1) whether the claimant is doing substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months; (3) whether the impairment meets or equals one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity, the claimant can still do his or her past relevant work; and (5) whether the claimant can make an adjustment to other work."  *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (quotations, citations and footnote omitted); 20 C.F.R. §§ 404.1520; 416.920 (2011).  Residual functional capacity is "the most" a claimant "can still do despite [the claimant's] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a) (2011).  "The claimant carries the initial burden of proving a disability in steps one through four of the analysis.  However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work."  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The ALJ initially employed the five-step sequential process and found Plaintiff disabled.  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 30, 2008.  AR 11.  At step two, Plaintiff had the following severe impairments: right unilateral hearing loss, degenerative joint disease and anterior ligament tear of the right knee, organic brain disorder, and ongoing polysubstance abuse.  At step three, Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 12.  Based on all of the impairments, including the substance abuse, Plaintiff had the RFC to perform medium work except for occasional climbing, and avoidance of concentrated exposure to hazards due to his right ear hearing loss.  He was capable of sustained simple repetitive non-public work.  But with substance abuse, Plaintiff would be off task as much as 10% because of a moderately impaired ability to interact with the public.  AR 13.  At step four, Plaintiff was unable to perform any past relevant work.  And at step five, no jobs existed in significant numbers in the national economy which Plaintiff could perform.  AR 15.  The ALJ therefore concluded Plaintiff was disabled.  AR 16.

In light of Plaintiff's substance abuse, however, the ALJ made additional findings.  He found that if Plaintiff stopped his substance abuse: (1) the remaining limitations would cause more than a minimal impact on his ability to perform basic work activities such that he would continue to have a severe impairment or combination thereof; (2) Plaintiff's impairment or combination thereof would not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; and (3) Plaintiff would have the RFC to perform medium work, except for occasional climbing and avoidance of concentrated exposure to hazards due to his right ear hearing loss, and he would be capable of sustained simple repetitive non-public work.  But Plaintiff would not be able to perform past relevant work.  There were however, a significant number of jobs in the national

economy which Plaintiff could perform as a janitor, kitchen helper or meat trimmer, considering his age, education, work experience, and RFC. AR 16-19.  Given these additional findings, the ALJ concluded that if Plaintiff stopped his substance abuse, he would not be disabled.  AR 19.

The ALJ ultimately found that because Plaintiff would not be disabled if he stopped the substance abuse, it was a contributing factor material to the disability determination such that he was not disabled within the meaning of the Act.  AR 19.

## II.   DISCUSSION

A.  *Legal Standards*

This Court reviews the Commissioner's final decision to determine if the findings are supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 401 (1971)), but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401. "If the evidence can reasonably support either affirming or reversing a decision, we may not substitute our judgment for that of the Commissioner.  However, we must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal citation and quotations omitted).  "If the evidence can support either outcome, the Commissioner's decision must be upheld."  *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003); *see* 42 U.S.C. § 405(g) (2010).  But even if supported by substantial evidence, a decision may be set aside for legal error. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

Nevertheless, an ALJ's error is harmless "when it was clear from the record that [the] error was inconsequential to the ultimate nondisability determination."  *Robbins v. Soc. Sec. Admin*. 466 F.3d 880, 885 (9th Cir. 2006).

11

B. *Analysis*

Plaintiff alleges: (1) the ALJ's finding that substance abuse was a contributing factor is not based on substantial evidence, (2) the ALJ did not provide clear and convincing reasons for rejecting Dr. Popper's opinion, and (3) the ALJ failed to consider Mr. Hays's statements.  Opening Br. 2.  The Court addresses the allegations in turn.

1. <u>Substance Abuse</u>

Plaintiff avers the ALJ's finding that substance abuse was a contributing factor material to Plaintiff's disability is unsupported by substantial evidence.  Opening Br. 9.  He contends the ALJ did not conduct a proper evaluation under 20 C.F.R. § 404.1535.  The Commissioner contends the ALJ considered all of Plaintiff's impairments and correctly found that the substance abuse caused his limitations.  Opp'n 8-9.

In *Bustamante v. Massanari,* 262 F.3d 949, 954055 (9th Cir. 2001), the Ninth Circuit explained the role of alcohol or drug addiction in the disability determination as follows:

> Under provisions added by the Contract with America Advancement Act, Pub.L. No. 104–121, 110 Stat. 847 (March 29, 1996), an 'individual shall not be considered to be disabled for purposes of [benefits under Title II or XVI of the Act] if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled.' 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); *see also Sousa v. Callahan,* 143 F.3d 1240, 1242 (9th Cir.1998).   The SSA's implementing regulations specify: 'If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.' 20 C.F.R. §§ 404.1535(a), 416.935(a).
>
> The implementing regulations, 20 C.F.R. §§ 404.1535 and 416.935, both begin with the conditional language '[i]f we find that you are disabled....'   It follows that an ALJ should not proceed with the analysis under §§ 404.1535 or 416.935 if he or she has not yet found the claimant to be disabled under the five-step inquiry. *See Drapeau,* 255 F.3d 1211, 1214 ('The ALJ cannot begin to apply [42 U.S.C.] § 423(d)(2)(C) properly when, as here, he has not yet made a finding of disability.')   In other words, an ALJ must first conduct the five-step inquiry without separating out the impact of alcoholism or drug

addiction.  If the ALJ finds that the claimant is not disabled under the five-step inquiry, then the claimant is not entitled to benefits and there is no need to proceed with the analysis under 20 C.F.R. §§ 404.1535 or 416.935.  If the ALJ finds that the claimant is disabled and there is 'medical evidence of [his or her] drug addiction or alcoholism,' then the ALJ should proceed under §§ 404.1535 or 416.935 to determine if the claimant 'would still [be found] disabled if [he or she] stopped using alcohol or drugs.'  20 C.F.R. §§ 404.1535, 416.935.

In this case, the ALJ's disability determination complied with section 404.1535.  The ALJ first conducted the five-step inquiry without separating the impact of Plaintiff's substance abuse.  At step two, the ALJ found Plaintiff "ha[d] the following severe impairments: right unilateral hearing loss, degenerative joint disease and anterior ligament tear of the right knew, organic brain disorder, and *ongoing polysubstance abuse*."  AR 12 (emphasis added).  At step three, the ALJ found that "based on all of the impairments, including *substance use disorders*, [Plaintiff] ha[d] the [RFC] to perform medium work . . . .  However, with substance abuse, [Plaintiff] will be off task as much as 10%, because of moderately impaired ability to interact with the public."  AR 13 (emphasis added).  At steps four and five, the ALJ found Plaintiff could not perform any past relevant work and no jobs existed in significant numbers in the national economy which Plaintiff could perform.  The ALJ thus concluded that a "finding of disabled" was appropriate.  AR 15-16.

It was only after the ALJ found Plaintiff disabled under the five-step inquiry that he then engaged in an analysis of whether Plaintiff would still be disabled without the substance abuse.  Under that analysis, the ALJ found that if Plaintiff stopped his substance abuse, he would continue to have a severe impairment or combination thereof, and the impairment or combination thereof would not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If he stopped the substance abuse, Plaintiff would have the same RFC and still would not be able to perform past relevant work.  But, without the substance abuse, Plaintiff could perform the jobs of a janitor, kitchen helper, or meat trimmer, of which there were significant numbers in the national economy.  The ALJ therefore concluded that a finding of "not disabled" was appropriate.

13

AR 19.  Consequently, any contention that the ALJ did not conduct an evaluation under section 404.1535's rubric necessarily fails.

With regard to whether substantial evidence supports the ALJ's finding, Plaintiff appears to take issue with the ALJ's: (1) reasoning concerning Plaintiff's high MMSE score and report of substance abuse, (2) failure to consider Plaintiff's earnings record, and (3) rejection of Dr. Popper's opinion.

First, in finding that substance abuse contributed to the disability, the ALJ indeed reasoned that Plaintiff's high MMSE score on November 2, 2011 at CVIHC resulted from him not using methamphetamine, as he reported to the CVIHC physician.  AR 16.  But, the ALJ also found that Plaintiff was not truthful with his report to the CVIHC physician, and considered his lack of truthfulness in the RFC finding.  AR 14.  While the ALJ's application of the evidence here may, at first blush, seem puzzling, the Court need not, however, resolve this issue.  Whether the ALJ erred in accepting plaintiff's statement to the CVHIC physician for purposes of finding that Plaintiff could work without substance abuse, and then faulting Plaintiff's veracity and the veracity of that statement for purposes of finding him not always truthful, is immaterial because the ALJ articulated other reasons for finding that substance abuse contributed to Plaintiff's disability.

The ALJ discussed Plaintiff's testimony of his history with substance abuse, the positive drug test results from CVIHC, and the opinions of on Drs. Gregg and Bitone.  AR 18.  Notably, Plaintiff testified to having a drinking problem, consuming two twenty-four ounce beer cans two to three times a week for the past two years.  He consumed alcohol two days before the hearing and used marijuana the week before, and did so once a week for the last twenty years.  AR 34-35.  He had also being using methamphetamine for over twenty years and did so a month or two before the hearing. AR 44-45.  Plaintiff's test results from a urine sample collected on March 31, 2010, showed positive for marijuana and methamphetamine.  AR 242.  Additionally, Dr. Gregg opined that drug and alcohol abuse was the only mental problem.  He believed the test results from Dr. Popper were not a

true representation of Plaintiff's mental functioning as there was evidence to the contrary.  He

opined that the substance abuse may be material to the disability determination because it appeared

Plaintiff could sustain simple repetitive tasks with limited public contact, and was capable of

sustained non-public simple work.  AR 293.

Second, Plaintiff asserts his ability to work, absent substance abuse, is contradicted by his

work and earnings history.  Indeed, Plaintiff's earnings record shows he had earnings in 1987

through 2004, with the exception of 2003.  AR 170.  That he had earnings for seventeen years before

his alleged disability in 2008 does not, however, undermine the ALJ's finding that he could perform

the job of a janitor, kitchen helper or meat trimmer, given the VE's testimony that Plaintiff could

perform those jobs (which existed in significant numbers in the national economy) based on his

limitations.  Finally, Plaintiff's contention that the ALJ adopted Dr. Gregg's opinion over Dr.

Popper's without providing clear and convincing evidence is without merit, as discussed below.

Contrary to Plaintiff's contention, substantial evidence supported the ALJ's finding that

substance abuse was a contributing factor.

2.  Dr. Mark Popper

Plaintiff avers the ALJ failed to provide clear and convincing reasons for rejecting Dr.

Popper's opinion concerning depression.  Opening Br. 13-18.  The Commissioner counters that

substantial evidence supported the ALJ's findings.  Opp'n 10.

"Cases in this circuit distinguish among the opinions of three types of physicians: (1) those

who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining

physicians).  As a general rule, more weight should be given to the opinion of a treating source than

to the opinion of doctors who do not treat the claimant."  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

1995) (footnote and citation omitted).  To reject a treating physician's opinion which is contradicted

by another physician, the ALJ must provide specific and legitimate reasons supported by substantial

15

evidence in the record.  *Id.*  (internal quotations omitted); *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1222 (9th Cir. 2010).  If the treating physician's opinion is not contradicted by another physician, the ALJ must provide "clear and convincing" reasons supported by substantial evidence in the record.  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  But an "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."  *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (quotations and citation omitted).

Dr. Popper's opinion contradicted the opinion of Drs. Bhatia and Gregg.  Specifically, Dr. Bhatia concluded that Plaintiff's memory impairment did not "stand" and that he could "sit and work."  AR 268.  Similarly, Dr. Gregg opined that Plaintiff could sustain simple repetitive tasks with limited public contact and non-public simple work, and suffered drug abuse and addiction.  AR 293.  In contrast, Dr. Popper found moderate to severe limitations related to Plaintiff's memory, that his low frustration tolerance could severely impact his ability to adapt to a normal work environment, and "was negative for drugs and alcohol."  AR 277, 274.  The Court therefore will determine whether the ALJ provided specific and legitimate reasons supported by substantial evidence.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *as amended* (Apr. 9, 1996) (stating the Commissioner must provide specific and legitimate reasons supported by substantial evidence in the record to reject a treating physician's opinion if it is contradicted by another physician's opinion .)

Here, the ALJ in fact accorded significant weight to Dr. Popper' s opinion concerning Plaintiff's functional limitations, but found that the "low level of functionality result[ed] from ongoing polysubstance abuse."  AR 14-15.  The ALJ based his finding on Plaintiff's admission to substance abuse at the examination with Dr. Popper and the opinion of Dr. Gregg, all of which find support in the record.  AR 14-15.

Indeed, Plaintiff told Dr. Popper about the regular drug and alcohol use.  Plaintiff admitted to using marijuana and consuming alcohol the day before, and to using methamphetamine "a couple of

16

days ago." AR 275. As for Dr. Gregg, he opined, based on Plaintiff's medical record, that the only

mental issue was the substance abuse and that Dr. Popper's evaluation of Plaintiff was not

representative of his mental functioning as there was contrary evidence, notably that of Dr. Bhatia,

another consultative examiner. Dr. Bhatia's neurological examination of Plaintiff produced

generally normal results, with an MMSE score of 28/30 reflecting normal cognition. AR 267. Dr.

Bhatia found, with knowledge of Plaintiff's "marijuana [use] and . . . social drinking," that his

memory impairment did not seem to "stand" and that he could "sit and work." AR 266, 268.

The ALJ thus provided specific and legitimate reasons for questioning Dr. Popper's opinion

to the extent that Plaintiff's substance was a contributing factor.

### 3. Third Party Statements

Finally, Plaintiff contends the ALJ failed to consider and weigh the written statements from

Plaintiff's father, Mr. Hays, in the Third Party Function Report. Opening Br. 18-20. The

Commissioner does not dispute that the ALJ failed to consider Mr. Hay's statements, but asserts that

any error committed was harmless because Mr. Hays alleged symptoms which Plaintiff had alleged

and which the ALJ rejected. Opp'n 12.

"[C]ompetent lay witness testimony *cannot* be disregarded without comment[.]" *Molina v.*

*Astrue,* 674 F.3d 1104, 1114 (9th Cir. 2012) (quotations omitted). Before discounting such

testimony, "the ALJ must give reasons that are germane to each witness." *Id.* (quotations omitted).

But the ALJ is not required to "discuss every witness's testimony on a[n] individualized, witness-by-

witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the

ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Id.*

Because he lived and spent twenty hours a day with Plaintiff, Mr. Hays could and did provide

relevant information about Plaintiff's impairments. *See* SSR 06-03p (while without power to

"establish the existence of a medically determinable impairment," sources which are not acceptable

medical sources (e.g., spouses) "may provide insight into the severity of the impairment(s) and how

it affects the individual's ability to function").  And such information supported Plaintiff's claims.  The ALJ's silence was thus error; albeit harmless.  *Molina,* 674 F.3d at 1115 ("We have long recognized that harmless error principles apply in the Social Security Act context.")

In pertinent part, Mr. Hays noted Plaintiff's severe injury at a young age.  He noted Plaintiff had anger problems at times and possible depression.  AR 197, 201.  He also noted Plaintiff's conditions affected his walking, hearing, memory, ability to complete tasks, concentration, and ability to follow instructions and get along with others.  AR 201.  Plaintiff also stayed in his room most of the time, slept a lot, and had to be "prod[d]ed" to engage in personal care or do anything.  AR 197.  But, while helpful to Plaintiff's case, Mr. Hay's statements largely paralleled Plaintiff's testimony and his statements to physicians, all of which the ALJ considered.  *Cf. Molina,* 674 F.3d at 1116 ("the ALJ's failure to consider the testimony at issue could not be deemed inconsequential to the ultimate nondisability determination, because the testimony identified limitations *not* considered by the ALJ, was uncontradicted . . . and was highly probative") (quotations omitted and emphasis added.)

Even assuming the ALJ did not consider Mr. Hay's statements, such error was harmless in light of the record.  As discussed, the ALJ in fact found Plaintiff disabled under the initial five-step inquiry.  The ultimate nondisability finding stemmed from the ALJ's conclusion that Plaintiff's substance abuse was a contributing factor, of which there is substantial evidence to support.  Thus, even without the error, the Court believes the ALJ would have reached the same result.  *Id.*, at 1115 ("in each case we look at the record as a whole to determine whether the error alters the outcome of the case").

///

///

///

///

18

III.  CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner.  The Clerk of Court is DIRECTED to enter judgment in favor of the Commissioner and against Plaintiff.

IT IS SO ORDERED.

Dated:   __September 30, 2015__             _____/s/ Sandra M. Snyder__
                                                    UNITED STATES MAGISTRATE JUDGE